IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN CLINT DRAPER,

      Plaintiff,                      No. CIV S-10-0032 KJM EFB P

    vs.

D. ROSARIO, et al.,

      Defendants.              FINDINGS AND RECOMMENDATIONS

                              /

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Presently before the court is defendants Fowler, Rogers, Rosario, and Rallos's ("defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure ("Rule") 12(b) and 12(b)(6), for failure to exhaust administrative remedies and for failure to state a claim, respectively. Dckt. No. 37.[1] For the reasons stated below, the undersigned finds that defendants' motion to dismiss must be granted in part and denied in part.

///

---

[1] Plaintiff filed an opposition and defendants filed a reply. Dckt. Nos. 39, 40. Thereafter, plaintiff filed a surreply. Dckt. No. 41. Defendants move to strike the surreply. Dckt. No. 42. The Local Rules provide only for a motion, an opposition, and a reply. E.D. Local Rule 230. Plaintiff neither sought nor obtained court approval before filing his surreply. Accordingly, the surreply is not considered in resolving this motion.

1

## I.     Background

This action proceeds on plaintiff's complaint filed on January 5, 2010. Dckt. Nos. 1, 17. Plaintiff alleges therein that on September 9, 2009, while he was walking with his hands cuffed behind his back, defendant Rosario slammed plaintiff into a steel grill gate. Dckt. No. 1 at 3.[2] Plaintiff claims that he fell to the hard concrete floor, causing him further injury. Plaintiff further alleges that defendant Rosario then attempted to break plaintiff's right arm and hand, kneed him in the back and right arm, and slammed his head on the concrete floor. *Id*. at 3-4. Plaintiff claims that he was not resisting during the altercation. *Id*. at 3.

Plaintiff claims that he subsequently met with defendant Fowler and provided a written report and a recorded statement of the incident. *Id*. at 4. He also claims that he was placed in Administrative Segregation ("Ad Seg") because defendant Rosario had submitted a falsified rule violation report stating that plaintiff assaulted Rosario. *Id*. On September 30, 2009, plaintiff again met with Fowler. *Id*. at 5. Fowler allegedly stated that he had unlawfully altered video recorded evidence documenting plaintiff's injuries. *Id*.

On October 17, 2009, a disciplinary hearing was held regarding the altercation between plaintiff and Rosario. *Id*. at 5. Plaintiff claims that he was not permitted to call any witnesses at the hearing. *Id*. Plaintiff also alleges that defendant Rogers, who was conducting the disciplinary hearing, informed plaintiff that he would believe an officer's word over any inmate's word. *Id*. Plaintiff also claims that Rogers found him guilty of a division D offense, even though plaintiff was not charged with a division D offense. *Id*. As a result of being found guilty of the division D offense, a classification committee gave plaintiff a seven month term in the Security Housing Unit ("SHU"). *Id*. at 6.

Plaintiff further alleges that on October 12, 2009, defendant Rallos, a physician, refused to take X-rays of plaintiff's injuries. *Id*.

---

[2] This and subsequent page number citations to plaintiff's complaint are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by plaintiff.

## II.	Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

3

1  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.
2  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.
3  1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply
4  essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.
5  1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).
6  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual
7  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.
8  Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The court need not accept
9  unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643
10 F.2d 618, 624 (9th Cir. 1981). A pro se litigant is, however, entitled to notice of the deficiencies
11 in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be
12 cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**III.  Discussion**

14 Plaintiff asserts claims against defendants for violating his civil rights.[3] Specifically,
15 plaintiff alleges that: 1) defendant Rogers violated his due process rights by conducting a biased
16 disciplinary hearing; 2) defendant Rosario violated his Eighth Amendment right to be free from
17 cruel and unusual punishment by using excessive force and violated his due process rights by
18 submitting a false Rule Violation Report; 3) defendant Fowler violated his due process rights by
19 altering evidence; and 4) defendant Rallos violated his Eighth Amendment rights by acting with
20 deliberate indifference to plaintiff's serious medical needs.[4]

---

[3] In his opposition brief, plaintiff contends that defendants' motion to dismiss should be denied because plaintiff is entitled to default judgment. Plaintiff has also filed a motion for default judgment. Dckt. No. 35. Subsequent to plaintiff filing his opposition to the present motion, this court issued an order denying plaintiff's motion for default judgment in which the court explained why plaintiff was not entitled to default judgment. Dckt. No. 43. The court need not readdress this issue.

[4] Despite the complaint's broad reference to "equal protection of the laws," a fair reading of the complaint does not suggest any basis for a legally cognizable claim for relief based upon

4

#### A.     Defendant Rosario

Plaintiff claims that Rosario violated his civil rights by using excessive force in violation of the Eighth Amendment and denying plaintiff procedural due process as required by the Fourteenth Amendment. Defendants argue that plaintiff's claims against Rosario should be dismissed because they are barred by *Edwards v. Balisok*. Defendants also argue that plaintiff failed to allege facts showing that Rosario violated the Fourteenth Amendment.

##### 1.     *Edwards v. Balisok*

Defendants contend that plaintiff's claims against Rosario are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), because plaintiff challenges findings of a disciplinary proceeding where a loss of good-time credits was assessed.

The Supreme Court has held, where a judgment in the prisoner's favor in his § 1983 action would necessarily imply the invalidity of a deprivation of good-time credits, the plaintiff must first demonstrate that the credits deprivation has been invalidated in order to state a cognizable § 1983 claim. *Edwards*, 520 U.S. at 644; *Heck*, 512 U.S. at 483, 486-87 (setting forth this "favorable termination" rule). The Ninth Circuit Court of Appeals has clarified that application of *Heck*'s favorable termination rule "turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003). The *Heck* bar exists to preserve the rule that challenges which, if successful, would necessarily imply the invalidity of incarceration or its duration, be brought via petition for writ of habeas corpus. *Muhammad v. Close*, 540 U.S. 749, 751-52 & n.1 (2004).

Defendants' request for judicial notice of prison records relating to plaintiff's disciplinary proceedings and CDCR "chronological history," is granted. *See* Dckt. No. 37. Those records show that the disciplinary conviction resulted in the loss of 90-days of behavioral credits. *Id.*,

---

the Equal Protection Clause of the Fourteenth Amendment. To the extent plaintiff intends to assert such a claim it must be dismissed for failure to state a claim.

Ex. A.  Those records also show that plaintiff is serving an indeterminate life sentence. *Id.*, Ex. B.

As a life-term prisoner, the loss of credits will have no effect on plaintiff's maximum sentence. *See Roman v. Knowles*, Case No. 07-cv-1343-JLS, 2011 U.S. Dist. LEXIS 95410, at *38-40 (S.D. Cal. June 20, 2011), *adopted by* 2011 U.S. Dist. LEXIS 95286 (S.D. Cal. Aug 25, 2011) (finding the favorable termination rule inapplicable under such circumstances).  And while the prison records indicate that the loss of credits has affected plaintiff's minium eligible parole date (MEPD), a change in plaintiff's MEPD will not necessarily affect the length of his sentence. *See Vandervall v. Feltner*, Case No. CIV-S-09-1576 DAD, 2010 U.S. Dist. LEXIS 72059, at *16-18, *adopted by* 2010 U.S. Dist. LEXIS 88704 (E.D. Cal. Aug. 25. 2010) ("Rather, the MEPD determines when plaintiff may appear before the Board of Parole Hearings (BPH) for his first parole suitability hearing. The BPH, in turn, has the exclusive authority to grant plaintiff parole and set any actual parole release date.").  Defendants drop a footnote indicating that "California state law provides a reduction in sentence based on the inmate's good-time credits." Dckt. No. 37 at 6 n. (citing Cal. Penal Code § 2933).  Defendants do not articulate how or if section 2933 would apply in these circumstances to reduce plaintiff's life sentence.

Accordingly, because defendants have failed to demonstrate how the loss of credits resulting from the disciplinary conviction will have any impact on the length of plaintiff's confinement, defendants' motion to dismiss claims as barred by the favorable termination rule must be denied. *See Ramirez*, 334 F.3d at 858 ("[W]here . . . a successful § 1983 action would not necessarily result in an earlier release from incarceration . . . the favorable termination rule of *Heck* and *Edwards* does not apply.")

**2.     Fourteenth Amendment Claim**

Plaintiff alleges that Rosario violated his right to procedural due process by submitting a false Rules Violation Report that stated plaintiff assaulted Rosario.  Dckt. No. 1 at 4, 16.

////

6

1  Plaintiff essentially claims that Rosario's false report contributed to plaintiff being found guilty
2  of a disciplinary charge, which ultimately led to the imposition of a seven month term in the
3  SHU. *Id*. at 4-6.
4       Prisoners have no constitutionally guaranteed right to be free from false accusations of
5  misconduct, so the mere falsification of a report does not give rise to a claim under § 1983. *See*
6  *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 952
7  (2d Cir. 1986). Thus, plaintiff's due process claim against Rosario should be dismissed.
8       To state a claim for the deprivation of procedural due process, plaintiff must allege a
9  defendant deprived him of a liberty interest. "[T]he Constitution itself does not give rise to a
10 liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v.*
11 *Austin*, 545 U.S. 209, 221 (2005). However, state regulations may create a liberty interest in
12 avoiding restrictive conditions of confinement if those conditions "present a dramatic departure
13 from the basic conditions of [the inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 485
14 (1995). Under *Sandin*, a liberty interest may exist where placement in administrative
15 segregation "imposes atypical and significant hardship in the inmate in relation to the ordinary
16 incidents of prison life." *Id*. at 484. For such placement to be "atypical and significant," there
17 must be some extraordinary circumstance or combination of circumstances that make the
18 confinement markedly more severe than non-punitive housing. *Serrano v. Francis*, 345 F.3d
19 1071, 1078-79 (9th Cir. 2003) (placing handicapped prisoner in disciplinary housing not
20 equipped to accommodate his needs and holding him there for nearly two months was an
21 "atypical and significant hardship" compared to "the ordinary incidents of prison life.").
22      A prisoner facing disciplinary measures and whose liberty interest is threatened is
23 entitled to advance written notice of the charge against him as well as a written statement of the
24 evidence relied upon by prison officials and the reasons for any disciplinary action taken. *See*
25 *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). An inmate also has a right to a hearing at which
26 he may "call witnesses and present documentary evidence in his defense when permitting him to

7

do so will not be unduly hazardous to institutional safety or correctional goals." *Id*., 418 U.S. at 566. *See also Ponte v. Real*, 471 U.S. 491, 495 (1985).

These procedural rights are addressed in the context of the claims as to each involved defendant.

### B.  Defendant Fowler

Plaintiff claims that defendant Fowler deprived him of procedural due process by failing to preserve videotape evidence that plaintiff intended to use at his disciplinary hearing.[5] Defendants argue that plaintiff's claim fails because plaintiff did not have a protected interest in CDCR's videotape. Plaintiff, however, does not allege that CDCR deprived him of his property (i.e. the videotape) without due process of law. Rather, a fair, indeed liberal, reading of the complaint suggests that plaintiff believes the loss of the videotape deprived him of a fair disciplinary hearing in violation of his procedural due process rights. Plaintiff claims that he had a disciplinary hearing on October 17, 2009, regarding the altercation between him and Rosario. Dckt. No. 1 at 5. Plaintiff was allegedly precluded from introducing videotape evidence that documented the injuries he sustained during the incident because Fowler altered the videotape. *Id*. At the hearing, plaintiff was found guilty of a Division D offense, which eventually resulted in plaintiff receiving a seven month term in the SHU. *Id*. at 5-6. Plaintiff essentially claims that Fowler violated his right to due process by precluding him from submitting evidence that would have allegedly shown that plaintiff did not commit the disciplinary violation that resulted in his SHU term.

Plaintiff's due process allegations against Fowler lacks sufficient facts to show that he had a protected liberty interest in not being transferred to the SHU or that he was deprived of some other liberty interest. *See Wilkinson*, 545 U.S. 209, 221 ("The Fourteenth Amendment's

---

[5] Although the complaint references the Eighth Amendment when discussing Fowler's alleged conduct, there is no plausible basis for construing the complaint as alleging an Eighth Amendment violation.

1  Due Process Clause protects persons against deprivations of life, liberty, or property; and those
2  who seek to invoke its procedural protection must establish that one of these interests is at
3  stake."). Plaintiff has not pled any facts demonstrating that the imposition of his SHU term
4  created an atypical and significant hardship compared to non-punitive housing or that it had any
5  effect on the duration of plaintiff's sentence. Accordingly, plaintiff's claim against Fowler
6  should be dismissed.[6]

   **C.    Defendant Rallos**

   Plaintiff claims that defendant Rallos violated his Eighth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference to his serious medical needs.[7]

   A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

---

[6] Accordingly, the undersigned need not address defendants' alternative arguments for dismissal of plaintiff's claim against Fowler.

[7] Defendants argue that plaintiff's due process claim against defendant Rallos should be dismissed. However, a fair reading of the complaint reveals that plaintiff does not assert a due process claim against Rallos - only an Eighth Amendment deliberate indifference to medical needs claim.

9

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Defendants argue that plaintiff has failed to state an Eighth Amendment claim against defendant Rallos because the allegations only show that plaintiff disagreed with Rallos as to the appropriate course of treatment. Defendants contend that plaintiff has failed to allege that the treatment plaintiff provided was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi v. Chung*, 391 F. 3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative

10

courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health and safety.").

Plaintiff alleges that Rallos denied him medical treatment by failing to take X-rays of plaintiff's injuries. Dckt. No. 1 at 6-7. However, the allegation that Rallos decided not to take X-rays does not show that the medical care provided was unacceptable or chosen in a conscious disregard to plaintiff's health. In *Estelle*, the plaintiff contended that defendants should have utilized more diagnostic techniques, including using X-rays, in attempting to diagnose the plaintiff's injury. *Estelle*, 429 U.S. at 107. The court noted that the decision of whether to order an X-rays is a classic example of a matter of medical judgment. *Id*. The court held that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id*. Accordingly, plaintiff fails to state a plausible claim that Rallos was deliberately indifferent to plaintiff's serious medical needs. *Id*.

### D.   Qualified Immunity[8]

Defendants argue that Rosario is entitled to qualified immunity because: 1) plaintiff has not pled facts showing the violation of a constitutional right, and 2) a reasonable officer in Rosario's position would have believed that his conduct was lawful.

Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In determining whether the doctrine of qualified immunity provides a government officer protection, a court must make two inquires: 1) do the facts alleged show that the officer violated a constitutional right; and 2) was the constitutional right well established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v.*

---

[8] Defendants argue that all of plaintiff's claims should be dismissed because defendants are entitled to qualified immunity. The court only address defendants' qualified immunity argument for plaintiff's Eighth Amendment claim against Rosario, as all other claims have been dismissed on other grounds.

11

1 *Callahan*, 555 U.S. 223, (2009) (courts have discretion to decide which of the two *Saucier*
2 prongs to address first).  A plaintiff invokes a "clearly established" right when "the contours of
3 the right [are] sufficiently clear that a reasonable official would understand that what he is doing
4 violates that right." *Anderson v. Creighton*, 483 U.S. 635, 40 (1987).

5       Defendants raise qualified immunity in the context of this Rule 12 motion.  Thus, the
6 core of their argument is that even assuming the allegations of the complaint to be true,
7 Rosario's alleged conduct is nonetheless covered by qualified immunity.  In determining
8 whether an officer is entitled to qualified immunity, a court must view the facts in the light most
9 favorable to the plaintiff.  *Saucier*, 533 U.S. at 201.  Rosario is not entitled to dismissal under
10 Rule 12(b)(6) based on qualified immunity under the first prong because plaintiff has pled
11 sufficient facts that, if proven, show that Rosario used excessive force against plaintiff in
12 violation of the Eighth Amendment.  *See* Dckt. No. 1 at 3-4 (alleging plaintiff was handcuffed
13 and not resisting when Rosario slammed his body into a steel grill gate and subsequently kneed
14 him, slammed his head on the concrete floor, and tried to break his arm).

15       Defendants also argue that Rosario is entitled to qualified immunity under the second
16 prong because a reasonable prison official in Rosario's position could have believed that his
17 alleged conduct was lawful.  *See Id*. ("The relevant, dispositive inquiry in determining whether a
18 right is clearly established is whether it would be clear to a reasonable officer that his conduct
19 was unlawful in the situation confronted.").  The law is well established that a prison official is
20 not permitted to physically abuse a non resisting inmate.  The Court of Appeals for the Ninth
21 Circuit has held that "by 1985, the law of this circuit would have put reasonable officers on
22 notice that an 'unprovoked and unjustified attack by a prison guard' violated clearly established
23 constitutional rights." *Lolli v. County of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) (*quoting*
24 *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir.1991).

25       Viewing the factual allegations of the complaint in the light most favorable to plaintiff, it
26 would not have been reasonable for Rosario to believe that his conduct was lawful.  Assuming

the allegations in the complaint as true, there appears to be no legitimate justification for Rosario's alleged use of force.  Under these circumstances, a reasonable prison official in Rosario's position would not have believed that his conduct was lawful.  Accordingly, it cannot be determined on this Rule 12(b)(6) motion that Rosario is entitled to qualified immunity on this claim.

### E.  Discretionary Dismissal

Defendants request the court exercise its discretion and dismiss plaintiff's complaint because plaintiff filed false statements with the court.  Plaintiff complaint indicates that he has only filed one previous lawsuit, Dckt. No. 1 at 1, but defendants submit court records, of which the court takes judicial notice, showing that plaintiff has previously filed numerous lawsuits. Dckt. No. 37, Exs. C, D.  To support their argument for dismissal, defendants cite to district court case from another circuit where the court dismissed an inmate's complaint for failure to reveal prior lawsuits.  *See Thomas v. Ammons*, No. CV409-139, 2009 WL 5174109 (S.D. Ga. Dec. 23, 2009).

The undersigned declines to recommend dismissal on this ground.  However, plaintiff is hereby admonished that failure to comply with the Federal Rules of Civil Procedure, including Rule 11, as well as the court's Local Rules, or orders of this court "may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."  Local Rule 110.  Pro se plaintiffs are subject to the same rules of procedure as other litigants.  *King v. Atiyeh*, 814 F.2d 565, 567 (1987).  Should plaintiff intentionally mislead the court in the future, all available sanctions will be considered.

### F.  Defendant Rogers

Plaintiff alleges that defendant Rogers violated his civil rights by conducting a biased disciplinary hearing, precluding plaintiff from using witnesses, relying on false statements, and finding plaintiff guilty of an uncharged offense.  Defendants argue that plaintiff's claim against Rogers may not be asserted before this court because plaintiff failed to exhaust his administrative

1 remedies.

2 The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief. . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

////

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Although a motion to dismiss for failure to exhaust administrative remedies prior to filing suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, when ruling on such a motion requires the court to look beyond the pleadings in the context of disputed issues of fact the court must do so under "a procedure closely analogous to summary judgment." *Wyatt*, 315 F.3d at 1119, n.14. Because care must be taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned applies the Rule 56 standards to exhaustion motions that require consideration of materials extrinsic to the complaint. *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL 3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

Defendants bear the burden of proving plaintiff's failure to exhaust. *Wyatt*, 315 F.3d at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

On April 21, 2011, the court informed plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14.

1    Defendants argue that plaintiff's claim against Rogers should be dismissed because
2 plaintiff failed to properly exhaust his administrative remedies prior to filing suit. In support of
3 their motion, defendants submit: 1) the declaration of D. Foston, Chief of the Inmate Appeals
4 Branch for the California Department of Corrections and Rehabilitation ("CDCR") ("Foston
5 Decl."); 2) the declaration of S. Cervantes, Appeals Coordinator at California State Prison,
6 Solano ("Cervantes Decl."); 3) the declaration of C. Mantel-Davis, Staff Services Analyst for the
7 Office of Health Care Appeals ("Mantel-Davis Decl.") and 4) the declaration of Zamora, Chief
8 of the Office of Third Level Appeals, California Prison Health Care Services ("Zamora Decl.").
9    According to defendants' evidence, the only grievances plaintiff filed that were accepted
10 for review and are relevant to the issues raised in this lawsuit are designated log nos. SOL- 09-
11 02463, SOL-09-02108, CSP-09-02277, CSP-09-02007, and SOL-21-09-13815. Cervantes Decl.
12 ¶¶ 6, 7; Foston Decl. ¶¶ 5, 6; Mantel-Davis Decl. ¶¶ 4, 5; Zamora Decl. ¶¶ 4, 5. The exhibits to
13 the Foston Declaration show that grievances SOL-09-02463 and SOL-09-02108 are not relevant
14 to plaintiff's claim against Rogers. Foston Decl., Exs. A, B. Grievance SOL-09-02463 relates to
15 a decision made by the Institutional Classification Committee, while grievance SOL-09-02108
16 relates to plaintiff's complaint that defendant Fowler inappropriately altered a videotape
17 recording. *Id*. The exhibit attached to the Zamora Declaration shows that grievance SOL-21-09-
18 13815 also does not pertain to plaintiff's claim against Rogers. Zamora Decl., Ex. A. That
19 grievance relates to plaintiff's claim that his request to have X-rays performed on his arm was
20 impermissibly denied. Zamora Decl., Ex. A.
21    Defendants' evidence also shows that the two remaining grievances that could have
22 exhausted plaintiff's administrative remedies were not appealed through the Director's level of
23 review. Cervantes declares that Grievance CSP-09-02007 was cancelled because plaintiff
24 refused to participate in a grievance interview. Cervantes Decl. ¶ 8. As for grievance CSP-09-
25 ////
26 ////

16

1  02277, defendants' evidence shows that it was rejected at the Director's level as incomplete.[9]
2  Foston Decl. ¶ 7.  Foston declares that she has performed a thorough review of the records and
3  that there is no indication that plaintiff ever resubmitted this grievance with the required
4  documents.  *Id*. at ¶¶ 5, 7.

5  Neither CSP-09-02007 nor CSP-S-09-02277 was sufficient to exhaust plaintiff's
6  administrative remedies.  Plaintiff's failure to comply with procedural rules resulted in neither
7  appeal being resolved at the Director's level.  *See Woodford*, 548 U.S. at 90 ("Proper exhaustion
8  demands compliance with an agency's deadlines and other critical procedural rules . . . .").
9  Although plaintiff could have resubmitted grievance CSP-S-09-02277 to the Director's level
10 with the required documentation and awaited a response, he failed to do so.  Defendants have
11 shown that administrative remedies remained available to plaintiff which he did not pursue and
12 plaintiff has produced no evidence to rebut that showing.  Therefore, defendants have satisfied
13 their burden of showing that plaintiff failed to properly exhaust his administrative remedies.

14 In opposition, plaintiff claims that defendants "engaged in impending and unethical
15 conduct of obstructing Plaintiff[']s CDC- 602's from being [e]xhausted in a [t]imely manner."
16 Dckt. No. 39 at 2.  However, plaintiff does not explain exactly how defendants prevented him
17 from exhausting his administrative remedies nor does he provide any evidence that defendants
18 interfered with the administrative appeals process.  Thus, plaintiff has failed to show that he was
19 precluded from exhausting his administrative remedies.

20 /////
21 /////
22 /////
23 /////

---

[9] Although not included in defendants' evidence, documents submitted with plaintiff's opposition indicate that grievance CSP-S-09-02277 contained plaintiff's complaint that Rogers had a predetermined assumption that plaintiff was guilty of the disciplinary violation. Dckt. No. 39-1 at 71.

17

In light of the above, the court finds that plaintiff failed to properly exhaust his administrative remedies and therefore the claim against Rogers must be dismissed without leave to amend.[10]

## IV. Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' July 21, 2011 motion to dismiss be DENIED as to plaintiff's Eighth Amendment excessive force claim against defendant Rosario, but GRANTED as to all other claims.

2. Defendant Rosario be ordered to file an answer to the complaint within the time provided in Rule 12 of the Federal Rules of Civil Procedure.

3. Plaintiff be granted leave to file an amended complaint within 30 days of the date of an order adopting these findings and recommendations, curing the deficiencies herein identified in the Fourteenth Amendment claims against Rosario and Fowler and the Eighth Amendment claim against defendant Rallos.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 9, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[10] Accordingly, the court does not address defendants' alternative arguments for dismissal of plaintiff's claim against Rogers.