UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CLINT DRAPER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>D. ROSARIO, et al.,<br><br>　　　　　Defendant. | No. 2:10-CV-32 KJM EFB<br><br><br>ORDER |

　　　　At trial of this matter, the court granted plaintiff's pretrial motion to exclude a digital audiovisual recording the defendant sought to introduce into evidence. The defendant represented the recording as that of an interview of plaintiff on September 9, 2009, soon after the incident leading to plaintiff's claim of excessive force tried in this case. Previously, in response to a motion to compel filed by plaintiff before the discovery cutoff, defendant's counsel had represented to the magistrate judge that the recording was unavailable, having been made when the camera was set on the incorrect recording, rendering conversion to a perceptible format impossible. Accepting this representation, the magistrate judge denied the motion to compel. Shortly before the initial date for trial of this matter, a litigation coordinator found a copy of a disc containing the recording the defendant represents as the September 9, 2009 interview; as the court's review confirms, the disc contains both audio and visual content.

　　　　Before making its decision to exclude the disc, the court allowed the parties to elicit

1

testimony regarding its contents and provenance outside the presence of the jury. The court issues this order to memorialize its reasons for excluding the recording, an order made originally from the bench on the second day of trial.

      I.      Facts Elicited Through Pretrial Testimony

From the testimony of the defendant's witnesses, two correctional officers, the current Litigation Coordinator at plaintiff's prison, and defendant's attorney at the time of the parties' discovery dispute, the court gleans the following facts: Correctional Officer Fowler recorded the September 9, 2009 interview of plaintiff, with a camera he was using for the first time. The camera had two settings for recording: "card" and "disc." While Fowler does not recall, he thinks he may have incorrectly left the camera on the "disc" setting, when no disc was in the camera. He does recall checking the camera after the interview, and being able to play the first few seconds of the interview on a small screen. Fowler then gave the camera to a supervisor, Officer Popovitz. Popovitz testified that he created a disc from the information on the camera, but when he played the disc he could only hear the audio. He was able to review the interview, visually and audibly, by playing the interview on the camera itself and viewing the small display screen incorporated in the camera. Popovitz then submitted the Incident Package required by the policies and procedures of the California Department of Corrections and Rehabilitation (CDCR), including the disc and the camera, to his supervisor. He explained to his supervisor the problem of not being able to create a complete copy of the interview. Within two to three weeks, the supervisor got back to Popovitz and told him he needed to arrange for a new interview; in fact plaintiff sat for a second interview on September 30. Popovitz also testified that as a matter of policy and procedure after he submitted a final Incident Package to his supervisor, the package went through a "couple of stages of review," before then being routed to a Use of Force Coordinator and ultimately to the Investigative Services Unit (ISU). No other witness provided testimony to clarify what happened with respect to the camera used for the September 9 interview or the disc Popovitz created.

The Litigation Coordinator who located the disc, Officer Cervantes, assumed his current position in May 2012. He testified that in mid-April 2014, he was looking for other materials in a

secure Support Maintenance Warehouse when he saw a box labeled "videos/documents 2003-09." When he looked in the box he saw a disc with a handwritten label including plaintiff's last name; the handwriting was that of Helen Pippin, an office tech who worked in the "ERO" office, apparently tasked with employee relations and located separately from the area where defendant worked and the 2009 incident occurred. The disc was loose, not contained in any Incident Package, and no other materials related to this case were in the box. Cervantes took the disc back to his office, where his office tech Amanda Thomas was able to play the disc on her computer and both view the visual images and hear the audio. Cervantes explained that it appeared Ms. Thomas was able to do this because she had Windows '03 software on her computer. Cervantes promptly provided a copy of the disc to defendant's trial counsel, and defendant's counsel provided a copy to plaintiff's counsel.

Defendant's attorney at the time plaintiff moved to compel the recording of the September 9 interview was Philip Arthur. Mr. Arthur testified that he requested a copy of the recording from CDCR as defendant's employer; he reviewed and authenticated copies of e-mails that confirmed these requests. In response to his request, Mr. Arthur was told that the recording of the interview was not available because it had been recorded on the incorrect setting. He did not then issue a subpoena for the recording, accepting CDCR's explanation. Mr. Arthur did testify that, as defendant's counsel, he was in a position to obtain the materials he required for litigation of the defense case.

II.   Legal Standards

In the context of a motion to compel, it is the party seeking the discovery who has the burden of showing the party from whom discovery is sought had control over it. *United States v. Int'l Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). "[C]ontrol need not be actual control; courts construe it broadly as 'the legal right to obtain documents upon demand.'" *Thomas v. Hickman*, No. 1:06-cv-00215 AWI SMS, 2007 WL 4302974, at *13 (E.D. Cal. Dec. 6, 2007). Some courts in this district have said that because of the relationship between CDCR and individual officers, the officers are deemed to have control of documents and videotapes in possession of CDCR. *See, e.g., Cato v. Avila*, No. 1:10–cv–0793–AWI–SMS PC

2012 WL 3637909 (E.D. Cal. Aug. 21. 2012); *Mitchell v. Adams*, 2009 WL 674348 (E.D. Cal. Mar. 6, 2009); *but see Emery v. Harris*, No. 1:10–cv–01947–JLT (PC), 2014 WL 710957, at *11 (E.D. Cal. 2/21/14) (rejecting the idea that an officer's employment by CDCR meant he should be sanctioned for CDCR's spoliation of evidence; "[t]hough, clearly, Defendant and the CDCR have an employment relationship, this does not mean necessarily, that their interests are aligned and Plaintiff provides no analysis that they are"); *Bryant v. Gallagher*, No. 1:11-cv-00446 LJO BAM PC, 2013 WL 3773862, at *4 (E.D. Cal. July, 17, 2013) (rejecting inmate's motion to compel individual officer to provide documents in CDCR's possession).

Under Rule 37(c) of the Federal Rules of Civil Procedure, a party may be sanctioned for failing timely to disclose evidence unless the failure was substantially justified or harmless. The burden of demonstrating either justification or harmlessness is on the party failing to disclose. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

> To determine whether a party's failure to disclose was substantially justified, district courts have considered factors such as good faith, willfulness or negligence, control, and surprise.

*Access Now, Inc. v. Macy's East, Inc.*, No. 99–9088–CIV, 2001 WL 36380366, at *3 (S.D. Fla. Oct. 22, 2001).

In *Waites v. Kirkbride Center*, the court found a failure to provide information was substantially justified when the defendant had conducted an extensive search for it but it had been misfiled. Civ. Action No. 10–cv–1487, 2012 WL 3104503, at *7 (E.D. Pa. Jul 30, 2012); *see also Williams v. Williams*, No. C 07-04464, 2013 WL 3157910, at *6 (N.D. Cal. Jun. 20, 2013) (finding late disclosure was substantially justified when Attorney General's office "did her due diligence to make sure that CDCR looked everywhere for evidence," though expressing frustration that the court had to prompt counsel to act).

On the other hand, in *Lund v. Citizens Financial Group, Inc.*, the court found the failure was not substantially justified: "defendants have not contended that the release was ever outside of their possession or control, or beyond their ability to recover. Rather, disruptions in record-keeping at the bank apparently made locating its own files difficult. That is not substantial justification." No. CV 97–183–M, 1999 WL 814341, at *12 (D.N.H. Sept. 30,1999 ).

4

> Harmlessness, however, is the key under Rule 37, not prejudice. The advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.

*Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citation, internal quotations omitted).  In evaluating harmlessness, the court considers "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

      III.    Analysis

Here, as a threshold matter, the court deems defendant Rosario to have had sufficient control of the disc of the September 9 interview so as to have been in a position to produce it in response to plaintiff's discovery request.  The testimony of Mr. Arthur, counsel for defendant at the time plaintiff's motion to compel was litigated, confirmed that Arthur was in a position to obtain documents and discs in the possession of CDCR as needed.

Given that defendant had sufficient control to be held responsible for failing timely to disclose evidence, the court considers whether the failure was substantially justified or harmless. Although Arthur did request the recording of the interview from CDCR, he readily accepted CDCR's report that the tape was unavailable because recorded on the incorrect setting.  Arthur did not probe this explanation, or serve a subpoena to exhaust efforts to obtain a copy of whatever CDCR had.  Thus he cannot be said to have conducted the kind of extensive search that would allow defendant to claim substantial justification for his failure to provide the recorded interview in a timely manner.  *See Lund*, 1999 WL 814341, at *12; *cf. Waites*, 2012 WL 3104503, at *7.

If defendant's late production of the disc containing the interview were harmless, then the disc might be offered as evidence during trial.  But defendant cannot overcome two of the factors relevant to determining harmlessness.  The late provision to plaintiff of the disc, long after the close of discovery, precluded plaintiff's counsel's deposing those with knowledge of the disc's creation, handling, copying and retention.  The provision of only a copy of the interview,

which carried only a digital date and time stamp, precluded counsel's ability to conduct a forensic analysis of the disc's contents. Introduction of the disc at trial would be disruptive in that it would inevitably lead to a "side trial" addressing the status of the disc itself, given the inability of defendant to establish a clear chain of custody from the original recording to a copy of a disc in a cardboard box in a locked storage warehouse. *Woodworker's Supply*, 170 F.3d at 993 (second and third harmlessness factors).

Because defendant's actions with respect to the copy of the September 9 interview were not substantially justified and introduction of the disc at trial would not have been harmless, defendant was sanctioned through preclusion of the ability to introduce the disc in the presence of the jury.

DATED: July 2, 2014.

_____
UNITED STATES DISTRICT JUDGE